FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

98 JUL 17 AM 11: 34

U.S. DISTRICT COURT
N.D. OF ALABAMA

FRANCES ANNE HUNTER,           )
    Plaintiff;                 )
                               )
-vs.-                          )    No. CV-96-P-1437-S
                               )
BAPTIST HEALTH SYSTEM, et al., )
    Defendants.                )
                               )

ENTERED

JUL 17 1998

Opinion

Defendants' Motion for Summary Judgment and defendants' Motion to Dismiss for Failure to Prosecute were considered by the court at its February 6, 1998 motion docket. For the reasons stated below, defendants' summary judgment motion is due to be GRANTED.

Statement of Facts[1]

This action arises out of plaintiff Francis Anne Hunter's ("Hunter") brief tenure as an employee of Baptist Health System, Inc. ("BHS").

In April 1995, Hunter (58) was accepted as a resident in the Clinical Pastoral Education ("CPE") program at the BHS-Princeton facility in Birmingham. Two other individuals, defendant Max Miller (45) ("Miller") and Cynthia Elledge (26) were also accepted into the program. Hunter's start date at the Princeton campus was September 5, 1995. Program participants at the BHS-Princeton campus also had frequent contact with participants in a comparable program at another BHS facility, BHS-Montclair. The participants in that program were 29, 61 and 41. At

---

1. The recitation of "facts" is based upon the materials submitted viewed in the light most favorable to the plaintiff. However, because plaintiff failed to submit any response to defendant's summary judgment motion, the facts contained herein reflect only the information provided by plaintiff in her complaint and by defendant in the statement of facts accompanying its summary judgment motion.

33

BHS-Princeton, Hunter's supervisors were Reverend William Dantzler (60), the director of pastoral education, and Reverend Charles Pieplow (54), the associate director for the CPE program. The three pastoral residents at BHS-Princeton were allowed to divide up certain responsibilities in the program among themselves. Miller was assigned to administer the "on-call" program, and Hunter was assigned to the position of "dean of the chapel."

On September 6, 1995, Miller told her that her hair was pretty. Hunter found this comment offensive; as she explained later in her deposition, "[A]ny type of flattering remarks to a professional woman or male by a person of the opposite sex is unappropriate." Miller touched Hunter on the arm on the same day, though she conceded in deposition that the touch was neither violent nor seductive.

Less than two weeks into the program, Hunter had a confrontation with her peers concerning the on-call program, which requires that the pastoral care residents must provide pastoral care coverage at BHS-Princeton 24 hours a day, seven days a week. The residents were unable to complete a workable on-call schedule because Hunter refused to be flexible about scheduling issues. On September 17, 1995, Hunter engaged in a confrontation with the nursing staff at the Princeton campus by refusing to perform individual pastoral care services for patients in the Transitional Care Unit. Shortly thereafter, Hunter complained to Pieplow that she did not like being assigned primarily to elderly patients, and she refused to visit patients in her assigned area. On September 20, 1995, during a Pastoral Concerns Seminar, Hunter complained for approximately 35 minutes about Miller's handling of the on-call program. Hunter later blamed Pieplow for allowing the seminar to go longer than the scheduled one hour.

On September 28, 1995, as they were discussing the on-call schedule, Miller allegedly

2

touched Hunter's clothed left thigh.

During a Pastoral Concerns Seminar on October 11, 1995, Miller touched Hunter in what she perceived to be a sexual way. According to Hunter, this touching occurred after Miller (who is black) had spent 25 minutes telling the seminar participants what he disliked about Hunter and had accused Hunter of being a racist. Hunter immediately told Miller not to touch her and explained to the seminar participants that the touching constituted sexual harassment. Following this altercation, Pieplow wrote an incident report noting that Hunter had intentionally placed her chair very close to Miller during the meeting. Pieplow did not see the touching referred to by Hunter, but he did see Miller make a gesture in which his hand might have brushed Hunter's arm.

On October 12, 1995, Hunter failed to attend a scheduled seminar at the Center for Pastoral Ministries on Montclair Road. The same day, Hunter sent a letter to BHS's Corporate Vice-President, Joe Boone Abbot, informing him that she might have a complaint of "Sexual Harassment and Retaliation." Hunter did not provide any details in this letter, but rather asked for information regarding the process for filing a complaint.

On October 13, 1995, Hunter filed a charge of discrimination with the EEOC, alleging sexual harassment, sex and age discrimination, and retaliation. Officers from BHS's Human Resources Department interviewed Hunter and Miller on October 18, 1995. They also took statements from residents Elledge and Glen Turner, both of whom described Miller's conduct as entirely appropriate. During her interview, Hunter stated that Miller had reached over and touched her arm during the meeting, and that that was the first time that Miller had ever touched her. At the conclusion of the internal investigation, BHS Human Resources Director James Warren concluded that Miller had not engaged in any behavior toward Hunter which could

3

reasonably be described as sexual harassment.

On October 19, 1995, Pieplow resumed responsibility for the on-call schedule because Hunter refused to work with her peers in creating the schedule.

On October 24, 1995, Hunter was discharged from the CPE program. The letter terminating Hunter listed six areas in which Hunter had demonstrated her inability to communicate with other personnel, to accept feedback, to participate in the seminars central to the program, and to assess and analyze her ministry through clinical tools. Hunter was escorted from the BHS-Princeton facility by BHS security officers.

On November 17, 1995, Hunter amended her EEOC to allege that she was terminated on the basis of her age and in retaliation for filing an EEOC charge. Upon receiving a right-to-sue letter from the EEOC, Hunter filed this action in June 1996, alleging violations of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA"). Hunter has also made state law claims for invasion of privacy, assault and battery, and defamation.

## Analysis

### I. Hostile Work Environment

To prevail on a hostile work environment claim of sexual harassment, a plaintiff must satisfy the standard set forth in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993). Specifically, a plaintiff must show 1) that the alleged conduct was severe or pervasive enough to create a hostile or abusive work environment, 2) that the environment must be, in objective terms, one that a reasonable person would find hostile or abusive, and 3) that the environment was, in fact, perceived by the plaintiff as hostile or abusive so as to actually alter the conditions of the plaintiff's employment. *Id.* at 21-22.

When measured against the standard set forth in *Harris*, it is clear that summary judgment in favor of defendants is appropriate as to Hunter's hostile work environment claim. Hunter has alleged only two instances in which she was touched by Miller. Both of these instances are most properly considered to be typical instances of one person touching another briefly, to gain the touched person's attention or to express concern. Several seminar participants who observed Miller's behavior stated that it was entirely appropriate. The court concludes that no reasonable person would have interpreted Miller's conduct as harassment.

## II. Age Discrimination

Plaintiff's claims of age discrimination are equally implausible. None of the evidence submitted to the court suggests that Hunter's age had anything to do with BHS's decision to terminate her from the CPE program. Hunter was both accepted into the program and terminated at age 58. One of her pastoral care peers, Jim Metzler, was accepted into the parallel program at BHS-Montclair at age 61. Hunter has submitted no evidence that her resident position at BHS-Princeton was subsequently filled by anyone, much less a younger employee. Perhaps most importantly, the decision to terminate Hunter's participation was apparently made by her supervisors, Pieplow (54) and Dantzler (60). Under these circumstances, summary judgment is due to be granted in favor of BHS as to Hunter's age discrimination claim.

## III. Retaliation

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must show 1) that she engaged in protected activity under Title VII; 2) that she was disadvantaged by an action of the employer simultaneously with or subsequent to such participation; and 3) that there is a causal connection between the protected activity and the adverse employment action. *Morgan*

5

*v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992). It is unlawful for an employer to discriminate against an employee "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII or "because [s]he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 20003-3(a). These two clauses are known as the "participation clause" and the "opposition clause." Hunter's complaint alleges that BHS retaliated against her "when she complained of discriminatory treatment and a sexually hostile work environment in violation of Title VII;" accordingly, Hunter's claim is due to be analyzed only under the "opposition clause."

"A plaintiff can establish a prima facie case of retaliation under the opposition clause of Title VII if [s]he shows that [s]he had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997). As the *Little* court noted, "It . . . is not enough for a plaintiff to allege that [her] belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was *objectively reasonable.*" *Id.* (emphasis added).

For the same reasons expressed above in the court's discussion of Hunter's hostile work environment claim, the court has concluded that Hunter has failed to meet the requirements for a prima facie claim of retaliation. Because no reasonable person could have concluded that the conduct complained of by Hunter — Miller's one or two brief touchings — could form the basis for a legitimate claim of sexual harassment, her subsequent complaint to BHS concerning those touchings cannot be considered a "protected activity" under Title VII. Hunter has, thus, failed to meet the threshold requirement for a Title VII retaliation claim, and summary judgment in favor of BHS is due to be granted.

## Conclusion

Because Hunter has failed to present a prima facie case of hostile work environment sexual harassment, age discrimination, or retaliation, summary judgment is due to be granted in favor of BHS and Miller. The court declines to exercise jurisdiction over plaintiff's state law claims of invasion of privacy, assault and battery, and defamation; those claims are due to be dismissed without prejudice to their being presented in an appropriate state court. Since the court has granted summary judgment on the merits, defendant's Motion to Dismiss for Failure to Prosecute is due to be denied as moot.

Dated: July 17, 1998

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    Ms. Frances Anne Fraser Hunter
    Mr. David Wooten Proctor
    Ms. Carole A. Golinski
    Mr. David M. Smith
    Mr. Brian R. Bostick